# WERNER U. SPITZ, M.D., FCAP

*Forensic Pathology and Toxicology*
23001 Greater Mack
St. Clair Shores, Michigan  48080

Phone: 586 776-2060   Fax: 586 776-8722

Diane L. Lucke, B.S.                                                  E-mail: wuspitz@aol.com
Administrative Assistant/Office Manager

March 23, 2017

Bill Bender, Esq.
Bender & Gritz
Diamond View Tower
350 Tenth Avenue, Suite 900
San Diego, CA  92101

Re:    **Tommy Yancy v California Highway Patrol**
       **Our File No:  6450**

Dear Mr. Bender:

On March 17, 2017, I received by email additional documents. These documents consist of opinion letters of:

Dr. Vicent DiMaio, forensic pathologist in San Antonio, Texas,

Dr. Gary Vilke, emergency physician in San Diego, California

Dr. Dominick Addario, psychiatrist, also in San Diego, California

I am well familiar with Dr. DiMaio and Dr. Vilke.

The following is an addendum to my previous report of February 23, 2017 and represents a rebuttal to the opinions of the gentlemen mentioned above.

Dr. DiMaio authored a book with his wife, Theresa, entitled Excited Delirium Syndrome, published by CRC Press in 2006. In this book on page 17, the authors indicate "the new era of psychopharmacology in the treatment of mentally ill patients saw the disappearance of the "chronic" form of excited delirium syndrome. What we now encounter in the mental health institutions,

EXHIBIT J at p. 1

Bill Bender, Esq.
**Re:   Tommy Yancy v California Highway Patrol**
March 23, 2017
Page two

hospitals and in the public area are deaths from the "acute" form of excited delirium syndrome." (The chronic form of excited delirium no longer exists.)

On page 43, the authors indicate that death in cases of excited delirium is due to a combination of the normal physiologic changes seen in a struggle combined with the use of illicit drugs, medications and natural disease. In this juncture, it significant that death does not occur from mental disease and as far as drugs are concerned, no death has yet been published as having occurred from marijuana and cannabinoids, in general, and Mr. Yancy had no cocaine in his system, no opioids, no methamphetamine, no LSD, no alcohol and no other drugs, including narcotics found in sudden death during restraint. Also, no synthetic cannabinoids or antipsychotic medications were found in a postmortem blood specimen retained at Yancy's autopsy.

However, it is clear that restrained individuals often beg to be released, being unable to breathe and become panicked while experiencing impending fear of doom and imminent fear of death.

The literature has shown time and again that almost invariably police are present when deaths from so-called excited delirium occur (See - O'Halloran, R.L. and Frank, J.G.: Asphyxial Death during Prone Restraint Position Revisited: A Report of 21 cases. Am. J. Forensic Med Pathol, 21(1), 39-52, 2000.)

As to sudden death during restraint, asphyxial deaths abound when victims are weighted down by application of pressure on their back, with the restrainers using their body weight, knees, hands, elbows, sitting on the victim and/or neck holds.

Dr. DiMaio in his book on page 30, quotes the San Diego ER group, of Drs. Chan, Vilke and others. This group conducted experiments in a laboratory where they weighted down volunteers, first with 25 and 50 pounds placed on their backs in prone position and later up to 225 pounds of pressure on their back, also in prone position. The results of these experiments were published in various journals, until 2010, when Dr. Theodore Chan of the Chan, Neuman, Vilke, group in San Diego, authors of multiple publications in the scientific literature where they indicated in the past that loading people with 225 pounds of pressure on their back is harmless in no way comparable to what goes on in the street and were never meant to replicate any relationship to police restraint.

Bill Bender, Esq.
**Re:    Tommy Yancy v California Highway Patrol**
March 23, 2017
Page three

The time has come to tell the reader of this document what it is that Dr. DiMaio considers the definition of excited delirium. We have all in the field of forensic pathology seen cases where the victim was excited when being restrained. We have also seen such people being delirious but we have not seen, not really, people who suffered of the "acute phase of excited delirium" because the definition of excited delirium, as given by Dr. DiMaio has been known for probably hundreds of years that stress, agitation, exercise and fear will cause an outpouring of adrenalin, especially when simultaneous restraint interfering with normal respiration, that is, asphyxia triggers arrhythmias of the heartbeat such as, ventricular fibrillation (V-fib).

Dr. Vilke in his Rule 26 disclosure report indicates in his words:

1.  The restraining process did not cause the sudden cardiac arrest and death in Mr. Yancy.
2.  The use of the TASER ECD did not contribute to the death of Mr. Yancy.
3.  There was no consistent clinical evidence of a neck hold on Mr. Yancy and the isolated hyoid bone fracture noted on autopsy did not cause or contribute to his sudden cardiac arrest and death. (Comment: Mr. Yancy had a fractured hyoid bone, according to Dr. Vilke an "isolated" fracture leads me to wonder, how many fractures of the hyoid bone are required to indicate that there was definitive evidence to indicate trauma to the neck, as caused so frequently in cases of death by strangulation. As to the word "isolated" used by Dr. Vilke in this juncture, let it be said, a fatal impact with a heavy object on the head causing a single skull fracture does not cause death, it is the concussive blow to the brain, that is fatal.)
4.  The dog bite did not contribute to the death of Mr. Yancy.
5.  The baton strike did not contribute to the death of Mr. Yancy.
6.  Mr. Yancy was exhibiting signs and symptoms consistent with excited delirium syndrome which is the probable cause of his sudden cardiac arrest and death.
7.  Mr. Yancy had an enlarged heart that placed him at significant risk of going into sudden cardiac arrest and dying. (Comment: Mr. Yancy had his mildly enlarged heart for years before he died but didn't die until violently restrained by police with pressure on his neck interfering with his ability to breathe. Dr. Vilke's theory whereby Yancy's enlarged heart placed him at risk of sudden cardiac arrest and dying is flawed by the fact that an enlarged heart did not kill Yancy who had a mildly enlarged heart for a

Bill Bender, Esq.
Re:    Tommy Yancy v California Highway Patrol
March 23, 2017
Page four

> long time. Cardiac enlargement does not occur over night. Yancy survived his interaction with the police, his altercation with the dog, being tased by EMD and is seen walking back to the police car appearing fine and it is only a short while later, while on the ground, after the compression of his neck, that he is non-responsive and dies.

8. The time to initiate CPR once the officers noted that Mr. Yancy was not breathing did not cause any harm or worsening of the outcome for Mr. Yancy. (Comment:  By the time police realized that Yancy was not breathing, he was also unresponsive, he was dead. CPR was performed on a dead man.)

Lastly, as to Dr. Dominick Addario, it would seem that Mr. Yancy died of a chronic mental disorder. He doesn't go as far as to call it excited delirium but he does go so far as to suggest that maybe Yancy died of suicide by cop.

People do not die as a direct result of mental illness. In 64 years of practicing forensic pathology and performing or supervising over 60,000 autopsies, I have yet to encounter a case of death from mental illness.

It is significant that the authoritative DSM listing all psychiatric conditions does not recognize and does not list excited delirium among the large multitude of psychiatric diagnoses.

When considering the circumstances surrounding Yancy's death, videos showing several officers on top of him, restraining Yancy, swarming him, inhibiting his ability to breathe, and one of these officers is shown on a video, Officer Acevedo, with his knee on Yancy's neck, while Yancy is in prone position with his head turned to the side, it becomes abundantly evident that nothing killed Yancy other than the blockage of his airway. Compression from behind in the neck area would push the airway onto the ground blocking the airway. The weight of an adult kneeling on the neck would surly compress the airway, sealing it to passage of air. According to Guyton, consciousness would be lost in 5 to 10 seconds. (Guyton, A.C. and Hall, J.E.: Textbook of Medical Physiology, 11th ed., Elsevier Saunders, Philadelphia, PA, 2006.) Death would follow rapidly. The officers did not realize that Yancy was unconscious and when they checked him, he was lifeless. CPR was to no avail. This history of events and autopsy report documenting the restraint and pressure on his neck, it is obvious Tommy Yancy did not die of excited delirium. Further, he did not die of mental illness, drug

Bill Bender, Esq.
Re:   Tommy Yancy v California Highway Patrol
March 23, 2017
Page five

intoxication, heart disease or high blood pressure. His death is abundantly documented by the autopsy which demonstrates indisputable trauma to the neck due to neck compression, cutting off his ability to breathe.

Reenactment of the event by Officer Acevedo who had his knee on Yancy's neck was performed during the officer's deposition, where he showed on a table how he subdued Yancy and how he held him down with his knee, illustrates how Yancy died. The certification of death as accident is in my opinion erroneous. Correct certification of the manner of death is homicide, since the outcome was predictable.

Tommy Yancy died unnecessarily of preventable asphyxia. But for the restraint by the police on May 11, 2014, Tommy Yancy, 32 year old male, would not have died. According to the records, Tommy Yancy had a normal life expectancy.

My opinions are based on the education, training and experience and are rendered to a reasonable degree of medical certainty.

Sincerely yours,

Werner U. Spitz, M.D.

WUS:dll
Dk:bend032317cor6450

EXHIBIT J at p. 5