

William E. Bender, Esq. (SBN: 167887)
Brandi Kurlander, Esq. (SBN: 203077)
BENDER & GRITZ
350 10th Avenue, Suite 900
San Diego, California 92101
TEL: (619) 515-0222
FAX: (619) 515-0221
E-mail: bbender@bendergritz.com

Dave Fox, Esq. (SBN 254651)
1221 Camino Del Mar
Del Mar, CA 92014
TEL: (858) 256-7616
FAX: (858) 256-7618
E-mail: Dave@foxlawapc.com

Attorney for Plaintiffs Alexis Yancy and Jayden Yancy

**FILED**

Jul 31 2017

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY          s/ judep          DEPUTY

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

ALEXIS YANCY and JAYDEN
YANCY, by and through their
Guardian Ad Litem, CATHERINE
HAWK, individually and on behalf
of the Estate of Tommy Yancy,
Junior, deceased,

        Plaintiffs,

  v.

STATE OF CALIFORNIA,
CALIFORNIA HIGHWAY
PATROL, GILBERT CALDERA,
HERACILO CARDENAS,
ROBERT GONZALES,
SALVADOR ACEVEDO,
FERNANDO ALVAREZ, JASON
GRAHAM, WES BOERNER, and
DEEANN GOUDIE,

        Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**Case No. 3:15-cv-0580-JM-PCL**

**THIRD AMENDED COMPLAINT
FOR DAMAGES**

/ / /

/ / /

/ / /

1

Plaintiffs Alexis Yancy and Jayden Yancy, by and through their Guardian Ad Litem, Catherine Hawk, individually and as representatives and successors in interest on behalf of the Estate of Tommy Yancy, Jr., deceased (collectively, "Plaintiffs"), allege and complain against Defendants as follows:

# I.
## JURISDICTION AND VENUE

1. This is a civil rights wrongful death/survival action brought for the redress of alleged deprivations of  constitutional rights as protected by 42 U.S.C. §§ 1983, 1985, 1986, 1988, and Fourteenth Amendments of the United States Constitution.  Jurisdiction is founded on 28 U.S.C. §§ 1331, 1343, and 1367.

2. Venue is properly within the District under 28 U.S.C. §1391(b) because all of the events and transactions giving rise to this action took place in Imperial County, California.

# II.
## NATURE OF ACTION

3. This wrongful death and civil rights action seeks compensatory damages and punitive damages arising from the violation of various rights under the United States Constitution and California law in connection with the killing of Plaintiffs' father, Tommy Yancy, Jr. ("Yancy" or "Decedent") by CHP officers on May 11, 2014.

4. At the time of his death, Yancy was—in addition to being the father of plaintiffs Alexis and Jayden Yancy—a 32-year-old black man and U.S. Army veteran residing in El Centro, California.  Alexis was 14 and Jayden was 8 at the time their father was killed.

# III.
## PARTIES

5. Plaintiffs Alexis and Jayden Yancy bring this action as Yancy's surviving

2

children and individual heirs (by and through their Guardian Ad Litem, Catherine Hawk) and as the personal representatives and successors in interest of the Estate of Tommy Yancy, Jr.  Plaintiffs assert the claims alleged herein pursuant to federal civil rights laws (42 USC §1983 and 1988) and California Code of Civil Procedure Sections 377.20 et seq. and 377.60 et seq., which provide for survival and wrongful death actions.

6. When a reference is made to "Plaintiffs" in this complaint it will include Alexis Yancy and Jayden Yancy as Tommy Yancy, Jr.'s surviving children, heirs, and the Estate of Tommy Yancy, Jr., of which Alexis Yancy and Jayden Yancy are the personal representatives and successors in interest, suing by and through their guardian ad litem, Catherine Hawk.

7. Catherine Hawk is not an individual plaintiff in the lawsuit.

8. Yancy died intestate.  Plaintiffs Alexis and Jayden Yancy, by and through their guardian ad litem, Catherine Hawk, are qualified to serve as representatives and successors in interest of Yancy's estate, as they are Mr. Yancy's only children and thus are entitled to inherit everything.

9. At all times mentioned in this Complaint, Plaintiffs resided in the County of Imperial, State of California.

10. At all times relevant hereto, individual defendant Gilbert Caldera ("Caldera") was a CHP Officer, and was one of the CHP officers who engaged in the conduct described below --- i.e., the use of excessive force --- against Tommy Yancy, Jr., that resulted in Mr. Yancy's death.

11. At all times relevant hereto, individual defendant Heracilo Cardenas ("Cardenas") was a CHP Officer, and was one of the CHP officers who engaged in the conduct described below --- i.e., the use of excessive force --- against Tommy Yancy, Jr., that resulted in Mr. Yancy's death.

12. At all times relevant hereto, individual defendant Robert Gonzales ("Gonzales") was a CHP Officer, and was one of the CHP officers who

engaged in the conduct described below --- i.e., the use of excessive force --- against Tommy Yancy, Jr., that resulted in Mr. Yancy's death.

13. At all times relevant hereto, individual defendant Fernando Alvarez ("Alvarez") was a CHP Officer, and was one of the CHP officers who engaged in the conduct described below --- i.e., the use of excessive force --- against Tommy Yancy, Jr., that resulted in Mr. Yancy's death.

14. At all times relevant hereto, individual defendant Salvador Acevedo ("Acevedo") was a CHP Officer, and was one of the CHP officers who engaged in the conduct described below --- i.e., the use of excessive force --- against Tommy Yancy, Jr., that resulted in Mr. Yancy's death.

15. At all times relevant hereto, individual defendant Jason Graham ("Graham") was a CHP Sergeant responsible for supervising and training the CHP officers named herein.

16. At all times relevant hereto, individual defendant Wes Boerner ("Boerner") was a CHP Sergeant responsible for supervising and training the CHP officers named herein.

17. At all times relevant hereto, individual defendant DeeAnn Goudie ("Goudie") was a CHP Sergeant responsible for supervising and training the CHP officers named herein.

18. At all times relevant hereto, each individual defendant acted in the course and scope of his or her employment with the CHP and pursuant to the police powers bestowed on him or her under California law.  As such, at all times relevant hereto, each individual defendant acted under the color of California law.

19. Plaintiffs are further informed and believe, and thereon allege, that each of the individual defendants herein gave consent, aid, and assistance to each of the other individual defendants, and authorized, ratified, and/or acquiesced in such acts and omissions, except as may be hereinafter otherwise specifically

alleged.   At all times relevant hereto, each individual defendant was jointly engaged in tortious activity, resulting in the deprivation of Plaintiffs' and Decedent's constitutional rights and other harm.

## IV.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

20. Plaintiffs have satisfied the California Government Code requirements for asserting state-law claims against public entities and employees.

## V.

## FACTS

21. On Sunday, May 11, 2014, at approximately 1:22 p.m., near the intersection of Highway 86 and 15th Street in Imperial, CA, Caldera pulled over Yancy because Yancy's front license plate was not affixed to his front bumper (it was facing outward on the passenger's side of the dashboard).  By approximately 1:30 p.m., Yancy was unresponsive.  And at approximately 2:36 p.m., Yancy was pronounced dead.

22. Yancy was, at the time of his death, a 32-year-old black man, U.S. Army veteran and father of two.  Plaintiffs Alexis and Jayden Yancy were 14 and 8-years-old, respectively, at the time of their father's death.

23. What apparently began as a routine traffic stop in Imperial, California quickly, and unnecessarily, escalated into a deadly situation.  After pulling Yancy over, Caldera claims he smelled the odor of marijuana in Yancy's car and, on this basis, was going to ask Yancy to exit his car.  Caldera claims Yancy told him that he was a veteran and that Yancy felt Caldera (who had pulled Yancy over in the past) was harassing Yancy by pulling him over for something as small as a missing front license plate.  Caldera also claims Yancy told Caldera that Yancy thought it was legal to drive with a license plate affixed only to the back bumper.  Before asking Yancy to exit the car, Caldera called for backup.

5

24. Cardenas was the first to respond. (*Id.* ¶ 24.)  Contrary to applicable policies and training materials, Caldera and Cardenas did not pause to formulate a plan, wait for additional backup, or even assess the need for additional backup. (*Id.*)  Neither did Cardenas attempt to confirm the basis for Caldera's impending demand that Yancy exit his car. (*Id.*)

25. Rather, once Cardenas arrived, he and Caldera immediately approached Yancy and demanded that Yancy exit his vehicle without providing Yancy any explanation.  Caldera and Cardenas claim Yancy (apparently triggered by the officers' sudden escalation) became verbally upset.  Contrary to applicable policies and training materials, Caldera and Cardenas did not then pause to further assess the situation, talk to Yancy, formulate a plan, or wait for additional backup.  Instead, Caldera immediately grabbed inside the car and yanked on Yancy's wrist to get him out.  Relenting to Caldera's efforts, Yancy pulled his wrist from Caldera's grip, opened the driver's door, and stood between the car and the open driver's door, now facing the officers, with empty hands and in clear distress.

26. Caldera then decided to use his CHP-issued canine to subdue Yancy: a subject with noted signs of distress, who was neither fleeing, actively resisting, or even approaching the officers.  In fact, Caldera claims he at first attempted to remotely release his canine but that his remote control malfunctioned and that he therefore left Cardenas alone with Yancy as Caldera traveled back to his patrol car to manually release the canine.  Once out of the patrol car, Caldera at first held the canine by its harness.  Caldera states he then told Yancy to get down on the ground or he would release the canine to bite Yancy.  Caldera claims Yancy refused and within less than thirty seconds after getting the canine out of the patrol car, Caldera—contrary to applicable policies and training materials—released the canine, ordering it to attack Yancy as he stood between his car and driver's door.

27. The canine latched onto the outside of Yancy's left forearm.  Yancy attempted to

6

defend himself from the attack.  At the same time, Caldera charged at Yancy and the canine, knocking them both to the ground.  As Caldera was on Yancy and the canine, Cardenas first struck Yancy's back with a baton before firing his TASER at Yancy, embedding the TASER darts in Yancy's lower back, while entangling and shocking Caldera in the process.  (*Id.*)

28. Gonzales arrived next to find a subdued and non-resisting Yancy.  In fact, after Caldera pulled the canine away, Yancy voluntarily rolled onto his stomach and put his hands behind his back to be cuffed.  Thus, while Caldera stood up and walked his canine back to the patrol car, Gonzales and Cardenas handcuffed Yancy in the prone position.  Yancy laid there for several minutes handcuffed, lying on the ground, with blood oozing from the puncture wounds left by the canine and the lacerations caused by being tackled to the ground.  Having been tased, struck by batons, and bitten several times by the canine, Yancy did not move.  While Yancy lay motionless on the ground, Caldera can be seen returning from the patrol car and plunging his knee into Yancy's back.

29. After minutes of Yancy lying face down and bleeding on the ground, Caldera brought Yancy to a standing position while Cardenas stood nearby with his TASER drawn.  Having a hold of Yancy's left arm and neck, Caldera began walking Yancy to a patrol car, apparently muttering something to Yancy along the way.  As Yancy turned his head to the left in apparent response to Caldera's words, Caldera suddenly pulled Yancy to the ground for a second time, slamming Yancy's head into a patrol car, leaving a bloody dent in the side of the patrol car.

30. On the ground again, the officers rolled Yancy onto his stomach (hands still cuffed behind his back), and Caldera (a large man) kneeled and pressed on the back of Yancy's body, along with Cardenas and Gonzales.

31. At this point, several other officers arrived and immediately piled on Yancy (still handcuffed and lying on his stomach), including defendants Acevedo and Alvarez.  Contrary to applicable policies and training materials, the

officers on top of Yancy did not take care to avoid obstructing Yancy's breathing, or to avoid vital areas such as the head and neck.  Acevedo, for example, kneeled and pressed on Yancy's upper back and neck.  This pressure coincides with the medical examiner's finding that Yancy's hyoid bone was fractured (something that generally occurs after tremendous pressure is applied to the neck).  Within moments of Acevedo and Alvarez's arrival, Yancy was unresponsive.

32. Minutes then passed before the officers rendered first aid and allowed paramedics (who the officers had held off) to treat Yancy.  It was, however, too late.  Neither the officers, paramedics, nor emergency department doctors and nurses were able to revive Yancy.  Approximately one hour after Caldera pulled him over for a missing front plate, Yancy was pronounced dead.

33. Despite the fact that Yancy was clearly unarmed, was outnumbered by officers, and was not posing a threat of death or bodily harm to anyone present, the officers, including Defendants, inexplicably attacked and killed Yancy.

34. At all relevant times hereto, Yancy was unarmed and in distress.

35. At all relevant times hereto, Yancy did not have a weapon or anything that looked like a weapon.  At most, Yancy offered only passive resistance in self defense to the excessive force inflicted upon him.

36. ███████████████████████████████████
███████████████████████████████████
███████████████████████████ (all three, "Supervisor Defendants").

37. ███████████████████████████████████
███████████████████████████████████
███████████████████████████████
███████████████████████████████████
███████████████████████████

8



38.

39. ████████████████████████████, attached hereto as **Attachment A**.

.[1]

40. The Supervisor Defendants were each responsible for supervising the Officer Defendants for a period of time sufficient to know the Officer Defendants lacked the necessary training and skills to appropriately handle an event like the one giving rise to this action.  The Supervisor Defendants were aware, ███ ████████████████████████████████, that Caldera and Cardenas in particular were unprepared to a handle a confrontational or otherwise distressed subject, and that Caldera and Cardenas were likely to use an excessive amount of force in response to such a subject.  The Supervisor Defendants nonetheless were deliberately indifferent to this risk.

## VI.

## FIRST CAUSE OF ACTION

## 42 U.S.C. § 1983 CIVIL RIGHTS VIOLATIONS:

## Fourth Amendment – Excessive Force; Wrongful Death

## (By Plaintiffs, as Yancy's Personal Representatives and Successors in Interest, against Caldera, Cardenas, Gonzales, Alvarez, Acevedo)

41. Plaintiffs incorporate by reference herein all allegations set forth above.

42. The Defendants' physical assault and battery of Decedent --- that is, by intentional grabbing, striking, deploying a canine, throwing, shooting a taser, and otherwise brutalizing him --- was done with the intent to injure Decedent.

43. The Defendants used deadly force against the Decedent.

44. The Defendants knew that Decedent was unarmed, and was not a threat to anyone including the officers themselves.  Defendants used excessive and deadly force against Decedent without legal justification or excuse.

45. The Defendants were acting under color of law and were acting or purporting to act in the performance of their official duties.

46. Each of the Defendants integrally participated in, or failed to intervene in, the conduct described above.

47. Decedent suffered a false arrest and unlawful seizure in violation of his

constitutional rights as guaranteed by the Fourth Amendment of the United States Constitution.

48. The Defendants deprived Decedent and Plaintiffs of rights, privileges and immunities secured to them by the Fourth Amendment of the United States Constitution in subjecting Decedent to excessive and unreasonable force.

49. The Defendants' use of excessive force caused, or was a substantial factor in causing harm to Plaintiffs and Decedent, including but not limited to economic harm, loss of economic assistance for the necessaries of life, pain, suffering, and emotional distress.

50. Said wrongful, illegal, and unconstitutional conduct by the Defendants is a proximate cause of the losses and damages sustained by Plaintiffs, as hereinafter alleged, in that they knowingly and willfully used deadly force against a driver who had not committed any crime, was unarmed, and not a danger to anyone, without provocation, necessity, or justification.

51. The attack, tasering, beating and use of a canine against Decedent, including but not limited to the improper restraint, improper arm bar and/or improper, excessive force/weight on Mr. Yancy's back (while he was are face down on the ground), which broke Mr. Yancy's hyoid bone, as referenced above, was excessive and unreasonable, especially because Decedent was unarmed, the Decedent was vastly outnumbered by the Defendants, and the Decedent did not pose an imminent threat of death or serious bodily injury to the Defendants or to anyone else.  The Defendants' use of a canine, a taser, and excessive force against the Decedent violated the law enforcement officers' training.

52. As a result of the conduct of the Defendants, Decedent died.

53. The conduct of the Defendants was willful, wanton, malicious, and done with reckless disregard for the rights and safety of Decedent and therefore warrants the imposition of exemplary and punitive damages as to each of

them.

54. Wherefore, Plaintiffs seek judgment against these Defendants as set forth in the Prayer for Relief.

## VII.

## SECOND CAUSE OF ACTION

## (42 U.S.C. § 1983 – Individual Supervisor Liability)

## (By Plaintiffs, as Yancy's Personal Representatives and Successors in Interest, against Graham, Boerner, and Goudie)

55. Plaintiffs incorporate by reference herein all allegations set forth above, and by this reference incorporate the same herein and makes each a part hereof as though fully set forth.

56. The Supervisor Defendants acted under color of state law, in that they acted pursuant to their duties as CHP sergeants, which duties included supervision of subordinate officers, ██████████████████████████████ ██████████████████████.

57. The Officer Defendants lacked adequate supervision and training to appropriately handle their encounter with Yancy, resulting in the violation of Yancy's right to be free from unreasonable seizures through the use of excessive force, as well as his right to be free from punishment without due process and cruel and unusual punishment.

58. The Supervisor Defendants were deliberately indifferent to the Officer Defendants' lack of adequate training and supervision in dealing with individuals experiencing psychiatric symptoms and in de-escalating rather than escalating potentially volatile situations.  The uniformity with which multiple officers failed to comply with CHP policies, procedures, and POST training requirements demonstrates a widespread lack of training and supervision.

59. The Supervisor Defendants' failure to adequately supervise and train the

12

Officer Defendants was a moving force in causing Yancy's death.  That is, this lack of adequate supervision and training was both an actual and proximate cause of the violation of Yancy's right to be free from excessive force and free from punishment without due process and cruel and unusual punishment.

60. Wherefore, Plaintiffs seek judgment against these Defendants as set forth in the Prayer for Relief.

## VIII.

## THIRD CAUSE OF ACTION

## (42 U.S.C. § 1983 – Survival Action)

## (By Plaintiffs, as Yancy's Personal Representatives and Successors in Interest, against Caldera, Cardenas, Gonzales, Alvarez, Acevedo, Graham, Boerner, and Goudie)

61. Plaintiffs incorporate by reference herein all allegations set forth above, and by this reference incorporate the same herein and makes each a part hereof as though fully set forth.

62. Plaintiffs, through their guardian ad litem, are the Successors in Interest and Personal Representatives of the Estate of Tommy Yancy, Jr.

63. As set forth above, the Officer Defendants used excessive force while attempting to arrest Tommy Yancy, Jr.  The Defendants' use of excessive force, as set forth above, was the direct and proximate cause of Tommy Yancy, Jr.'s injuries prior to death and death.   The Supervisor Defendants were also an actual and proximate cause of Yancy's death, in that they failed to adequately supervise and train the Officer Defendants, they recklessly disregarded the probability that this lack of supervision and training would result in the violation of constitutional rights, and this lack of supervision and training actually resulted in the violation of constitutional rights, to wit,

Yancy's right to be free from excessive force, as well as his right to be free from punishment without due process and cruel and unusual punishment.

64. As a result of the deliberate indifference, reckless indifference and/or negligence of Defendants as more fully described above, the Estate of Tommy Yancy Jr. has suffered and continues to suffer injuries and damages as set forth in the Damages section of this complaint, including but not limited to economic damages and medical bills.

65. The Officer Defendants who used excessive force against Tommy Yancy, Jr., leading to his death, and the Supervisor Defendants who failed to adequately supervise and train the Officer Defendants, were acting within the course and scope of their employment with their respective public entity employers at the time they engaged in the above-referenced misconduct.

66. Those damages, as allowed by California Code of Civil Procedure §377.30 and 377.34, include, but are not limited to the Decedent's pain and suffering, emotional distress, and economic harm and losses, as set forth in the "Damages" section below and the Prayer for Relief.

67. Wherefore, Plaintiffs seek judgment against these Defendants as set forth in the Prayer for Relief.

## IX.

## FOURTH CAUSE OF ACTION

## Wrongful Death (42 U.S.C. §1983)

## (By Plaintiffs as Yancy's Surviving Children and Heirs against Caldera, Cardenas, Gonzales, Alvarez, Acevedo, Graham, Boerner, and Goudie)

68. Plaintiffs incorporate by reference herein all allegations set forth above, and by this reference incorporate the same herein and makes each a part hereof as though fully set forth.

69. As referenced above, Defendants, and each of them, committed wrongful acts

14

which proximately caused Yancy's death.

70. More specifically, the Officer Defendants used excessive force during the traffic stop and while attempting to arrest Yancy.  And the Supervisor Defendants failed to adequately supervise and train the Officer Defendants, recklessly disregarded the probability that this lack of supervision and training would result in the violation of constitutional rights, and this lack of supervision and training actually resulted in the violation of constitutional rights, to wit, Yancy's constitutional rights.

71. Defendants deprived Yancy of his constitutionally-protected right to life and liberty, including his Fourth Amendment right to be free from excessive force, as well as his right to be free from punishment without due process and cruel and unusual punishment.

72. The conduct alleged herein violated Tommy Yancy, Jr.'s rights, and was the legal, proximate, and foreseeable cause of Tommy Yancy, Jr. suffering economic harm, emotional distress, pain and suffering, and further general and special damages according to proof at the time of trial.

73. Wherefore, Plaintiffs seek judgment against these Defendants as set forth in the Prayer for Relief.

## X.

## FIFTH CAUSE OF ACTION

## (Violation of the Bane Civil Rights Act)

## (By Plaintiffs, as Yancy's Personal Representatives and Successors in Interest, against Caldera, Cardenas, Gonzales, Alvarez, Acevedo)

74. Plaintiffs incorporate by reference herein all allegations set forth above, and by this reference incorporate the same herein and makes each a part hereof as though fully set forth.

75. On or about the above stated dates, Defendants and each of them violated

15

Decedent's and Plaintiffs' civil rights, guaranteed by the United States Constitution, federal law, the California Constitution and the laws of the State of California thereby violating California Civil Code Sections 52, 52.1(a) and 52.1(b).

76. Defendants intentionally interfered with the Decedent's and Plaintiffs' civil rights by committing intentional and repeated violent acts upon the Decedent.

77. Defendants interfered with or attempted to interfere with Plaintiffs' and Decedent's right to be free from state actions that deprive them of life, liberty, or property by threatening or committing violent acts.  Defendants used threats, intimidation and coercion against the Decedent, and in doing so engaged in a violation of Decedent's constitutional right to life and liberty.

78. Defendants interfered with or attempted to interfere with Plaintiffs' right to be free from unwarranted interference with her familial relationship with Decedent by threatening or committing violent acts.

79. Defendants injured Plaintiffs and Decedent to prevent them from exercising the above-mentioned rights or retaliate against them for having exercised the above-mentioned rights.

80. Plaintiffs and Decedent were harmed.

81. Defendants' conduct caused or was a substantial factor in causing Plaintiffs' and Decedent's harm.

82. By reason of the aforementioned acts and omissions, Plaintiffs have suffered and continue to suffer injuries and damages, including but not limited to pain and suffering, emotional distress, loss of companionship and society, and economic harm, including loss of economic assistance for the necessaries of life, as set forth in the Damages section of this complaint and the civil penalties set forth in Civil Code Section 52.

83. The conduct of the Defendants amounts to oppression, fraud, or malice within the meaning of Civil Code Section 3294 et seq., and punitive damages

1  should be assessed against each non-municipal Individual Defendant and Doe

2  Defendant for the purposes of punishment and deterrence.

3  84. Wherefore, Plaintiffs seek judgment against these Defendants as set forth in

4  the Prayer for Relief.

## XI.

## SIXTH CAUSE OF ACTION

### (Assault (Cal. Govt. Code § 820 and California Common Law)

### (Injuries/Damages/Harm Before Death and Wrongful Death)

### (By Plaintiffs, as Yancy's Personal Representatives and Successors in Interest, against Caldera, Cardenas, Gonzales, Alvarez, and Acevedo)

85. Plaintiffs incorporate by reference herein all allegations set forth above, and by this reference incorporate the same herein and makes each a part hereof as though fully set forth.

86. Defendants acted, intending to cause and did cause Decedent to suffer apprehension of an immediate harmful contact.

87. Decedent reasonably believed that he was about to be touched in a harmful or an offensive manner.

88. Defendants threatened to touch Decedent in a harmful or an offensive manner.

89. It reasonably appeared to Decedent that Defendants were about to carry out the threat.

90. Decedent did not consent to Defendants' conduct.

91. Decedent and Plaintiffs were harmed.

92. Defendants' conduct caused or was a substantial factor in causing Decedent's and Plaintiffs' harm.

93. Plaintiffs are currently uncertain of exactly which Individual Defendant law enforcement officers and other Doe Defendants (whose identities are

17

currently unknown) committed this assault against Tommy Yancy, Jr.  As set forth above, Plaintiffs will move to amend this Second Amended Complaint to add the names of those individuals once their names are ascertained.

94. The intentional and reckless acts of Defendants in committing an assault upon Decedent were willful, malicious, oppressive, and in conscious disregard of Decedent and Plaintiffs' rights, entitling Plaintiffs to a punitive damages award.

95. As a proximate cause of the unlawful assault by Defendants, Decedent was severely injured and killed, thereby causing Plaintiffs to sustain the losses and damages as alleged in this complaint, including but not limited to pain and suffering, emotional distress, loss of companionship and society, and economic harm, including loss of economic assistance for the necessaries of life, as set forth in the Damages section of this complaint and requested in the Prayer for Relief.

96. The intentional and reckless acts of Defendants in committing an assault upon Decedent were willful, malicious, oppressive, and in conscious disregard of Decedent and Plaintiffs' rights, entitling Plaintiffs to a punitive damages award against the Defendants.

97. Wherefore, Plaintiffs seek judgment against these Defendants as set forth in the Prayer for Relief.

## XII.

## SEVENTH CAUSE OF ACTION

### (Battery (Cal. Govt. Code § 820 and California Common Law)

### (Injuries/Damages/Harm Before Death and Wrongful Death)

### (By Plaintiffs, as Yancy's Personal Representatives and Successors in Interest, against Caldera, Cardenas, Gonzales, Alvarez, and Acevedo)

98. Plaintiffs incorporate by reference herein all allegations set forth above, and

18

by this reference incorporate the same herein and makes each a part hereof as though fully set forth.

99. The Defendants, while working as law enforcement officers for their employers, public entities, and acting within the course and scope of their duties, intentionally attacked and brutalized Decedent repeatedly with the assistance of department-issued weapons.

100. Defendants intentionally, willfully and recklessly committed a battery on the person of the Decedent, deliberately intending to cause severe injury to Decedent.

101. Defendants touched Decedent with the intent to harm or offend him by needlessly grabbing, choking and throwing Decedent to the ground to handcuff him, and using improper restraints, improper arm bars and/or the improper, excessive use of force/weight on Mr. Yancy's back while he was face down on the ground, which broke Mr. Yancy's hyoid bone, as referenced above.

102. Decedent never consented to have the Defendants touch or attack him as described above.

103. Decedent was harmed by Defendants' conduct.

104. The actions of the Defendants caused the Decedent severe pain and suffering and loss of enjoyment of life. He ultimately died from his injuries. The Defendants did not have legal justification for using deadly force against the Decedent.  The use of deadly force against Decedent was objectively unreasonable.

105. A reasonable person in Decedent's situation would have been offended by the touching and offended by the unnecessary attack.

106. Defendants' conduct caused or was a substantial factor in causing Decedent's and Plaintiffs' harm.

107. The Public Entity Defendants, as well as the Individual Defendants

who are managers, supervisors and policy-makers for their public agencies, are liable for the acts of their officers as they have agreed with and or ratified those acts of misconduct.

108.    The Public Entity Defendants are vicariously liable for the wrongful acts of the Defendants pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject him or her to liability.

109.    As a proximate cause of the unlawful assault by Defendants, Decedent was severely injured and killed, thereby causing Plaintiffs to sustain the losses and damages as alleged in this complaint, including but not limited to pain and suffering, emotional distress, loss of companionship and society, and economic harm, including loss of economic assistance for the necessaries of life, as set forth in the Damages section of this complaint and requested in the Prayer for Relief.

110.    The intentional and reckless acts of Defendants in committing an assault upon Decedent were willful, malicious, oppressive, and in conscious disregard of Decedent and Plaintiffs' rights, entitling Plaintiffs to a punitive damages award against the Defendants.

111.    Wherefore, Plaintiffs seek judgment against these Defendants as set forth in the Prayer for Relief.

## XIII.

## EIGHTH CAUSE OF ACTION

## (False Arrest)

## (By all Plaintiffs, as Yancy's Personal Representatives and Successors in Interest, against Caldera, Cardenas,  Gonzales, Alvarez, Acevedo)

112.    Plaintiffs incorporate by reference herein all allegations set forth

above, and by this reference incorporate the same herein and makes each a part hereof as though fully set forth.

113.     By the acts alleged herein, particularly the act of arresting Decedent without a warrant or probable cause, Decedent was falsely arrested, and according to the Coroner's Report, died about one hour after his arrest, entitling him to damages pursuant to California law.

114.     Defendants' conduct caused or was a substantial factor in causing Decedent's and Plaintiffs' harm.

115.     As a proximate cause of the unlawful arrest by Defendants, Decedent was severely injured and killed, thereby causing Plaintiffs to sustain the losses and damages as alleged in this complaint, including but not limited to pain and suffering, emotional distress, loss of companionship and society, and economic harm, including loss of economic assistance for the necessaries of life, as set forth in the Damages section of this complaint and requested in the Prayer for Relief.

116.     The intentional and reckless acts of Defendants in committing an unlawful arrest upon Decedent were willful, malicious, oppressive, and in conscious disregard of Decedent and Plaintiffs' rights, entitling Plaintiffs to a punitive damages award against the Defendants.

117.     Wherefore, Plaintiffs seek judgment against these Defendants as set forth in the Prayer for Relief.

## XIV.

## NINTH CAUSE OF ACTION

## (Negligence (Cal. Govt. Code § 815.2, 820 and California Common Law)

## (Injuries/Damages/Harm Before Death and Wrongful Death)

## (By Plaintiffs, as Yancy's Personal Representatives and Successors in Interest, against Gilbert Caldera, Cardenas, Gonzales, Alvarez, and Acevedo)

21

118.     Plaintiffs incorporate by reference herein all allegations set forth above, and by this reference incorporate the same herein and makes each a part hereof as though fully set forth.

119.     The actions and inactions of the Defendants were negligent and reckless, including but not limited to:

(a) the failure to properly and adequately assess the need to detain, arrest, and use reasonable force against Decedent;

(b) the negligent tactics and handling of the situation with Decedent, including pre-taser shooting negligence;

(c) the negligent detention, arrest, and use of force, including deadly force, against Decedent;

(d) the failure to ensure that adequate numbers of employees with appropriate education and training were available to meet the needs of and protect the rights of Decedent;

120.     As a result of Defendants' negligence as alleged above, and other undiscovered negligent conduct, Decedent suffered injuries, damages and harm while alive, and eventually lost his life.

121.     Defendants' negligence as alleged above, and other undiscovered negligent conduct, caused or was a substantial factor in causing harm to Decedent and Plaintiffs.

122.     By reason of the aforementioned acts and omissions, Plaintiffs have suffered and continue to suffer injuries and damages, including but not limited to pain and suffering, emotional distress, loss of companionship and society, and economic harm, including loss of economic assistance for the necessaries of life, as set forth in the Damages section of this complaint and requested in the Prayer for Relief.

123.     Wherefore, Plaintiffs seek judgment against these Defendants as set forth in the Prayer for Relief.

## XV.

## TENTH CAUSE OF ACTION

## Wrongful Death, C.C.P. §377.60 et seq.

## (By Plaintiffs, as Yancy's Surviving Children and Heirs, against Caldera, Cardenas, Gonzales, Alvarez, and Acevedo)

124.     Plaintiffs incorporate by reference herein all allegations set forth above, and by this reference incorporate the same herein and makes each a part hereof as though fully set forth.

125.     As referenced above, Defendants committed wrongful acts which proximately caused the death of Tommy Yancy, Jr. Specifically, Defendants deprived Tommy Yancy, Jr. of his rights to life and liberty under the United States Constitution, as well as his right to be free from punishment without due process and cruel and unusual punishment.

126.     These wrongful acts, as alleged above, causing injuries, losses, damages and harm to Plaintiffs, including but not limited to pain and suffering, emotional distress, loss of companionship and society, and economic harm, including loss of economic assistance for the necessaries of life, as set forth in the Damages section of this complaint and requested in the Prayer for Relief.

127.     The intentional and reckless acts of Defendants in committing an unlawful arrest upon Decedent were willful, malicious, oppressive, and in conscious disregard of Decedent and Plaintiffs' rights, entitling Plaintiffs to a punitive damages award against the Defendants.

128.     Wherefore, Plaintiffs seek judgment against these Defendants as set forth in the Prayer for Relief.

## XVI.

## ELEVENTH CAUSE OF ACTION

23

**Negligent Supervision and Training**

**(By Plaintiffs, as Yancy's Personal Representatives and Successors in Interest, against Graham, Boerner, Goudie, and State/CHP)**

129.   Plaintiffs incorporate by reference herein all allegations set forth above, and by this reference incorporate the same herein and makes each a part hereof as though fully set forth.

130.   At the time of their interaction with Yancy on May 11, 2014, the Officer Defendants were unfit and/or incompetent to perform their duties as CHP officers.

131.   The Supervisor Defendants knew or should have known the Officer Defendants were unfit and/or incompetent to perform their duties as CHP officers.

132.   The Officer Defendants' unfitness and incompetence and, in particular, their lack of supervision and training actually and proximately resulted in Yancy's death.

133.   The Supervisor Defendants' failure to supervise and train the Officer Defendants was a substantial factor in causing Yancy's death.

134.   Because the Supervisor Defendants' duty to supervise and train the Officer Defendants falls within the course and scope of the Supervisor Defendants' duties as CHP sergeants, the State of California/CHP is, pursuant to Government Code § 815.2, vicariously liable for the harm arising from the Supervisor Defendants' failure to supervise and train the Officer Defendants.

## XVII.

## DAMAGES

1. Plaintiffs incorporate by reference herein all allegations set forth above, and by this reference incorporate the same herein and makes each a part hereof as

1    though fully set forth.

2.  Plaintiffs bring this claim individually and as Successors in Interest to

    Decedent, and as Personal Representatives of Decedent's, Tommy Yancy

    Jr.'s Estate, and seek both survival and wrongful death damages for the

    violation of Decedent's rights and the harms to Decedent prior to his death.

3.  As a direct and proximate result of each Defendants' acts and/or omissions as

    set forth above, Plaintiffs have been deprived of the life-long love,

    companionship, comfort, support, society, care and sustenance of Decedent,

    and will continue to be so deprived for the remainder of their natural lives.

4.  As a further proximate result of the above described acts and omissions of

    Defendants, and each of them, Plaintiffs have been deprived of the financial

    support of Decedent. Plaintiffs were financially dependent upon Decedent for

    the necessaries of life and will continue to incur the lifelong loss of

    Decedent's financial support in the future and for the remainder of their

    natural lives, in an amount according to proof, and all to their financial

    detriment.

175. In addition, Plaintiffs sustained the following injuries and damages, past and

    future, including:

    a.  Wrongful death of Tommy Yancy Junior;

    b.  Conscious extreme pain, suffering, fear of impending death, cruelty,

        humiliation, degradation, misery, and loss of personal safety;

    c.  Hospital, paramedics, and other medical expenses;

    d.  Coroner's fees, funeral and burial expenses;

    e.  Loss of familial relationships, including loss of love, companionship,

        comfort, affection, society, services, solace, and moral support;

    f.  Loss of financial support and necessaries of life;

    g.  Violation of constitutional rights;

    h.  All damages, attorneys' fees, and penalties recoverable under 42 U.S.C.

§§ 1983 and 1988, and as otherwise allowed under California and United States statutes, codes, and common law;

i.   Tommy Yancy Junior's loss of life, pursuant to federal civil rights law; and

j.   Tommy Yancy Junior's conscious pain and suffering, pursuant to federal civil rights law and state law.

## XVI.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request entry of judgment in their favor and against all Defendants, jointly and severally, as follows:

1.   For compensatory and exemplary damages in an amount according to proof and which is fair, just and reasonable;

2.   For funeral and burial expenses, and loss of financial support;

3.   For general damages according to proof at the time of trial;

4.    For medical and related expenses according to proof at the time of trial;

5.   For punitive damages under 42 U.S.C. § 1983 and California law in an amount according to proof and which is fair, just, and reasonable, against all Individual Defendants and the Individual DOE Defendants in their individual capacity;

6.   For all other damages, penalties, costs, interest, and attorney fees as allowed by 42 U.S.C. §§ 1983 and 1988; California Code of Civil Procedure sections 377.20 *et seq.*, 377.60 *et seq.*, and 1021.5; California Civil Code sections 52 *et seq.* and 52.1, and as otherwise may be allowed by California and/or federal law;

7.   For reasonable costs of this suit and attorneys' fees;

8.   For injunctive relief as the Court may deem just, proper, and appropriate; and

9.   For such further other relief as the Court may deem just, proper, and

THIRD AMENDED COMPLAINT ('15CV0580 JM PCL)

1   appropriate.

## XVII.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury pursuant to Federal Rule of Civil Procedure 38.

Dated: August 28, 2015                              s/Dave Fox
                                                    William E. Bender, Esq.
                                                    Dave Fox, Esq.
                                                    Attorneys for Plaintiffs