William E. Bender, Esq. (SBN: 167887)
Brandi Kurlander, Esq. (SBN: 203077)
**BENDER & GRITZ**
350 10th Avenue, Suite 900
San Diego, California 92101
TEL: (619) 515-0222
FAX: (619) 515-0221
E-mail: bbender@bendergritz.com

Dave A. Fox, Esq. (SBN: 254651)
**FOX LAW, APC**
225 W. Plaza St., Suite 102
Solana Beach, CA 92075
TEL: (858) 256-7616
FAX: (858) 256-7618
E-mail: Dave@foxlawapc.com

Attorney for Plaintiffs Alexis Yancy and Jayden Yancy

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEXIS YANCY and JAYDEN YANCY, by and through their Guardian Ad Litem, KATHERINE HAWK, individually and on behalf of the Estate of Tommy Yancy, Junior, deceased,<br><br>            Plaintiffs,<br><br>      v.<br><br>STATE OF CALIFORNIA et al.,<br><br>            Defendants. | Case No. 3:15-cv-0580-JM-PCL<br><br>**REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION *IN LIMINE* TO EXCLUDE ANY EVIDENCE OF THE PRESENCE OF MARIJUANA IN DECEDENT TOMMY YANCY'S SYSTEM DURING THE INCIDENT**<br><br>**[MOTION *IN LIMINE* NO. 3 of 6]**<br><br>Judge:   Hon. Jeffrey T. Miller<br>Ctrm.:   5D (Schwartz Courthouse)<br>Date:    November 16, 2017<br>Time:    10:00 a.m. |

0

# I.   INTRODUCTION

Plaintiffs Alexis Yancy and Jayden Yancy ("Plaintiffs") requested an order from this Court excluding evidence and reference to the presence of marijuana in decedent Tommy Yancy's system during the incident.  This Motion was made on the primary grounds that (1) the Defendant California Highway Patrol's ("CHP") own investigation concluded that Mr. Yancy was not under the influence of marijuana despite the low levels of marijuana metabolites found in his body, and (2) Defendants' own medical experts testified that marijuana did not contribute to Mr. Yancy's agitated state and risk of "excited delirium syndrome," nor did it cause his death.

Instead of confronting these arguments – indeed, they are wholly ignored in Defendants' Opposition – Defendants rely on the testimony of their psychiatry expert, Dr. Dominick Addario, for his contrary conclusions that Mr. Yancy *was* intoxicated and that it affected his mental state during the incident to justify the officer's failure to use verbal de-escalation techniques.  Defendants maintain this argument in the face of the CHP investigative report and testimony of Defendants' medical experts that Mr. Yancy was not intoxicated, and marijuana did not contribute to his agitated state as set forth in Plaintiffs' Motion.  There is simply no basis for Dr. Addario's advocacy masquerading as an "opinion."

Nevertheless, even Dr. Addario admitted at deposition that the low levels of marijuana found in Mr. Yancy's system does not necessarily indicate that Mr. Yancy's judgment was affected and, even if it was affected, Dr. Addario cannot say to what degree.  Thus, even accepting Dr. Addario's testimony for the sake of argument, the presence of marijuana in Mr. Yancy's system did not affect Mr. Yancy's interaction with the police during the incident and, therefore, has no relevance regarding the reasonableness of Defendants' use of force under the circumstances.

/////

1

1    The evidence is also not relevant to Plaintiffs' damages.  Defendants argue

2    that the evidence is admissible to show Mr. Yancy "for the man he really was."

3    This evidence should be excluded as impermissible character evidence by the very

4    purpose Defendants admit they intend to use it for.

5    In addition, due to no fault owing to anyone other than the Defendants, they

6    have no information about who Mr. Yancy was.  Defendants only deposed *one*

7    person – Mr. Yancy's estranged ex-wife – during discovery.  Defendants did not

8    even depose the Plaintiffs in this action, his fiancée who lived with him, or any

9    other family member or friend who knew Mr. Yancy and the relationship he had

10   with his family and children.  Defendants, therefore, have no evidence regarding

11   Mr. Yancy as a person, father, fiancée, or son, and a small amount of marijuana

12   metabolite found in Mr. Yancy's system has no bearing on this question.

13   Similarly, the presence of a small amount of marijuana purportedly found in

14   his pocket after he died is not relevant to the officer's use of force in this case.  The

15   officers did not know of this at the time of the encounter.  And obviously, the

16   existence of a small amount of marijuana (which would be legal today), was not in

17   Mr. Yancy's system during the incident and could not have affected his behavior.

18   Though Plaintiffs maintain there is no relevance to this evidence, any

19   minimal probative value that can be found is outweighed by the risk of confusion of

20   issues and misleading the jury.  This is in large part due to the Defendant CHP's

21   own investigation that Mr. Yancy was not intoxicated and Defendants' own experts

22   that will testify that marijuana did not affect Mr. Yancy's agitative state and did not

23   cause his death.  Needless time will be spent ensuring the jury does not make the

24   wrong conclusions from this evidence.  Notably, Defendants ignore these issues and

25   address only their purported limited time to present the jury with this evidence on

26   this issue and the recent California voter initiative legalizing marijuana.  These

27   factors do not overcome the exclusion under Rules 403 and 404.

28   /////

REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' MIL TO EXCLUDE EVIDENCE OF THE
PRESENCE OF MARIJUANA IN DECEDENT TOMMY YANCY'S SYSTEM DURING THE INCIDENT

1    For all the foregoing reasons, evidence of the small amounts of marijuana in

2  Mr. Yancy's system should be excluded.

3  **II.   ARGUMENT**

4    **A.   It Is Undisputed that Mr. Yancy Was *Not* Under the Influence of**
       **Marijuana During the Incident**

5

6    As a preliminary issue, Defendants misrepresent the central inquiry in this

7  case in their attempt to establish some sort of relevancy to the presence of

8  marijuana in Mr. Yancy's system at the time of the incident.  Defendants maintain

9  that this evidence is relevant to rebut "Plaintiffs' central theme that *no physical*

10  *force was necessary* because Yancy would have responded to more and further

11  verbal de-escalation techniques" and they maintain that "Plaintiffs [*sic*] central

12  argument is that Defendants could have used further and additional verbal de-

13  escalation techniques to *avoid the use of force*."  (Opp. at 1, 3 (emphasis added).)

14  These representations are inaccurate.

15    As stated repeatedly throughout this litigation and in the motions *in limine*

16  presented to the Court, the *only* relevant inquiry relating to the Defendant Officers'

17  conduct is whether their use of force was reasonable under the circumstances

18  presented to them at the time of the incident.  Plaintiffs maintain it was not

19  reasonable, and the officers should have employed lesser means of force – physical

20  or not, verbal de-escalation techniques or not.  When viewed against the proper

21  objective inquiry in this case, it is clear that the trace of a small amount of

22  marijuana in Mr. Yancy's system is irrelevant.

23    First, it is established that Mr. Yancy was not under the influence of

24  marijuana during the incident.  The Defendant California Highway Patrol concluded

25  itself that, despite testing positive for minimal amounts of marijuana metabolites,

26  Mr. Yancy was not under the influence of marijuana at the time of the incident.

27  (Motion at 4-5 (citing testimony from Sergeant Eric Nicholas that confirmed the

28  CHP investigation concluded Mr. Yancy was not under the influence of alcohol or

1   any drug, including marijuana, during the incident and that while the toxicology

2   report showed the presence of some marijuana metabolites, it is not the type

3   normally seen with recent marijuana use.)  Defendants' Opposition wholly ignores

4   this evidence.

5        Instead, the only evidence Defendants rely upon is testimony from their

6   expert witness, Dr. Dominick Addario,[1] that Mr. Yancy was under the influence

7   based upon blood test levels that another State has classified as "intoxication."

8   (Opp. at 4.)  This conclusion is contrary to the CHP's findings and even Dr.

9   Addario admitted at deposition that the presence of these levels of marijuana

10  metabolites does not necessarily indicate that Mr. Yancy's judgment was affected

11  and, even if it was affected, Dr. Addario cannot say to what degree:

12        Q.   But whether or not he's under the influence, quote,

13             unquote, under the law, doesn't necessarily tell you

14             whether or not for sure it clouded his judgment.  Is

15             that fair?  I mean, it can happen with alcohol as well.

16        A.   Correct.   That's the measure that they used that

17             represents a risk issue for clouding a person's ability

18             to drive and use judgment and operating dangerous

19             equipment.  So -- but I can't say to what degree.

20  (Fox Decl., Ex. A, Addario Dep. 126:13-22; *see also id.*, Ex. C, Graham Dep.

21  51:23-52:1 (unable to opine regarding the effect marijuana had on Mr. Yancy's

22  mental state during the incident).

23  /////

24

25  [1] Concurrently with this motion, Plaintiffs have filed a Motion *In Limine* to exclude

26  the opinions of Dr. Addario on the grounds that he is not qualified to proffer the
    opinions he seeks to introduce at trial, he cannot satisfy the *Daubert* standards of

27  reliable expert testimony, and his opinions are irrelevant.  (*See* Plaintiffs' Motion *In

28  Limine* to Exclude Opinion and Testimony of Defendants' Expert Dr. Dominick
    Addario, No. 2 of 6.)

4

1   Defendants also try to assign relevance to the presence of marijuana in Mr.
2   Yancy's system to Dr. Addario's opinion that the "presence of marijuana in
3   Yancy's system would have contributed to his agitated state and that can cause
4   stress on the body including the cardiovascular system, and that in Yancy's case
5   marijuana did not act to calm him down." (Opp. at 5.)  However, this opinion
6   directly contradicts testimony of Defendants' own medical causation experts, Dr.
7   Gary Vilke and Dr. Michael Graham, that testified that marijuana did not contribute
8   to Mr. Yancy's agitated state or risk of excited delirium syndrome:

9       Q.   And you're not offering an opinion – or your
10           offering an opinion that marijuana contributed
11           somehow to a finding of excited delirium, right?
12      A.   I think his history of schizophrenia and not being
13           treated is – is the criteria enough to say that he is at
14           risk for excited delirium syndrome.  So you got the
15           marijuana itself, isn't – I'm not saying it's
16           contributing to that, no.
17  (Fox Decl., Ex. B, Vilke Dep. 38:11-18.)

18      Q.   And I -- and is it fair to say that you're in the
19           agreement, too, that marijuana is not such a drug
20           that would induce excited delirium?
21      A.   To my knowledge, it hasn't been shown to do so.
22  (Fox Decl., Ex. C, Graham Dep. 16:22-17:1.)  In addition, and as fully developed in
23  Plaintiffs' Motion, Defendants' own medical experts do not opine that marijuana
24  contributed to Mr. Yancy's death and will not offer opinions as to what effect, if any,
25  marijuana had on Mr. Yancy during the incident.  (*See* Motion at 5-6.)

26      In sum, it is established that Mr. Yancy was not under the influence of
27  marijuana during his interaction with the police and that the presence of marijuana
28  did not contribute to Mr. Yancy's death.  Defense experts Dr. Vilke and Dr.

Graham testified that marijuana did not contribute to Mr. Yancy's agitated state and risk for excited delirium syndrome. Any contrary opinion by Dr. Addario that the presence of marijuana in Mr. Yancy's system contributed to his agitation must be rejected.

Dr. Addario admitted he cannot say to what degree the presence of marijuana may have affected Mr. Yancy and he provides no basis other than levels of marijuana intoxication established by the State of Colorado to make the leap that the miniscule levels of marijuana present contributed to Mr. Yancy's behavior at the time of the incident. Accordingly, evidence of the small amounts of marijuana in Mr. Yancy's system is completely irrelevant to his interaction with the police during the incident, and whether their use of force was reasonable under the circumstances. Therefore, the evidence must be excluded. *See* Fed. R. Evid. 402.

**B.      The Presence of Marijuana in Mr. Yancy is Irrelevant to Damages**

Defendants argue that the low level traces of marijuana found in Mr. Yancy's system is relevant to "show Yancy as the man he really was" and "the length and quality of the relationships Yancy had and would have had with his children." (Opp. at 2.)

Defendants' very statement for the use of this evidence to "show Yancy as the man he really was" is a blatant attempt to use forbidden character evidence and must be excluded under Rule 404. Fed. R. Evid. 404(a) ("Evidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait.").

Moreover, Defendants have no idea who Mr. Yancy was or his relationship with the Plaintiffs. Defendants failed to depose anybody other than Katherine Hawk, Mr. Yancy's ex-wife who he had divorced nearly a decade before the incident and who had limited interaction with Mr. Yancy in the years leading up to his death. Defendants did not take the deposition of the Plaintiffs in this case, Mr. Yancy's children that he left behind, to learn about the relationship they had with

their father and explore the losses they suffered and will continue to suffer growing up without a Dad.  Defendants did not depose Mr. Yancy's fiancée at the time of his death, and they failed to depose any family members or friends that knew Mr. Yancy and his relationship with his family.  Defendants cannot now use evidence of minute levels of marijuana to make the giant leap that these small traces diminished his relationship with his family to rectify Defendants' lack of investigation and discovery into Plaintiffs' damages.

Reliance on comparative fault principles also does not warrant admission of this evidence.[2]  Consistent with the discussion above, Defendants cannot show that the minimal trace of marijuana metabolites in Mr. Yancy's body had any effect on his interactions with the police and, therefore, cannot be attributed to Mr. Yancy's death to apportion responsibility to him for his own death.  (*See* Section II.A.)  This type of evidence, to purportedly show Mr. Yancy's past behavior means he must have been at fault at a different, later time, is also inadmissible pursuant to FRE 404(b)(1).  Accordingly, this evidence is irrelevant to issues of damages and comparative fault, inadmissible as a matter of law,  and must be excluded.[3]

## C.   Defendants Have Failed to Overcome Exclusion Under Rule 403

For the reasons discussed above, the presence of marijuana in Mr. Yancy's system has no relevance to any issue at trial.  Thus, the admissibility inquiry ends here.  *See* Fed. R. Evid. 402.  Nevertheless, if this Court finds relevance, the

/////

---

[2] This argument is only relevant to Plaintiffs' state law claims.  Concepts of comparative fault are not applicable in actions filed under 42 U.S.C. § 1983.  *See Jones v. Cty. of San Bernardino*, No. EDCV 15-00080-DTB, 2016 WL 4425711, at *16 (C.D. Cal. Aug. 17, 2016).

[3] Defendants also indicate that evidence of Mr. Yancy's history of marijuana use and dependence is relevant to comparative fault.  (Opp. at 6.)  Admission of Mr. Yancy's past psychological history is discussed fully in Plaintiffs Motion *In Limine* to Exclude Evidence of Decedent's Past Psychological and Criminal History (No. 1 of 6.).

substantial risk of undue prejudice greatly outweighs any minimal probative value that can be found.  *See* Fed. R. Evid. 403.

The only grounds Defendants put forth to overcome the exclusion of Rule 403 is that they "do not intend to spend a significant amount of time" presenting this evidence and they rely upon California's recent legalization of recreational marijuana to support their argument that the evidence will not upset the jury.  (Opp. at 7.)  This is insufficient to warrant admission of the evidence and ignores the practical reality of a trial by jury in federal court in which only *one juror*, not a majority, needs to be misled for Defendants to succeed in presenting this improper evidence.

Defendants ignore Plaintiffs' concerns of confusion of issues and misleading the jury due to the CHP's own investigation that Mr. Yancy was not intoxicated and Defendants' own experts that will testify that marijuana did not affect Mr. Yancy's agitative state and did not cause his death.  (Motion at 7.)  Needless time will be wasted to ensure the jury does not make the wrong inference from this evidence.  Combined with the risk of negative bias of Mr. Yancy that will be created – and cannot be denied solely by reliance upon the recent voter poll – the evidence must be excluded.  *See* Fed. R. Evid. 403.

## III.  CONCLUSION

For the foregoing reasons, and those stated in Plaintiff's opening memorandum of points and authorities in support of this Motion, Plaintiffs respectfully request that the Court grant Plaintiff's motion *in limine* to exclude any evidence of, reference to, or mention that decedent Tommy Yancy had marijuana in his system at the time of the incident.

Dated:  October 3, 2017                    **FOX LAW, APC**

                                           s/ Dave A. Fox
                                           DAVE A. FOX
                                           Attorneys for Plaintiffs

8