William E. Bender, Esq. (SBN: 167887)
**BENDER & GRITZ**
350 10th Avenue, Suite 900
San Diego, California 92101
Tel: (619) 515-0222
Fax: (619) 515-0221
E-mail: bbender@bendergritz.com

Dave Fox, Esq. (SBN: 254651)
**FOX LAW, APC**
225 W. Plaza St., Suite 102
Solana Beach, CA 92075
Tel: (858) 256-7616
Fax: (858) 256-7618
E-mail: Dave@foxlawapc.com

Russell A. Gold, Esq. (SBN: 179498)
**LAW OFFICE OF RUSSELL A. GOLD**
501 W. Broadway, Suite 1025
San Diego, CA 92101
Tel:   (619) 537-9926
Fax:   (619) 923-3840
E-mail: rgold@russgoldlaw.com

Attorney for Plaintiffs Alexis Yancy and Jayden Yancy

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEXIS YANCY and JAYDEN YANCY, by and through their Guardian Ad Litem, KATHERINE HAWK, individually and on behalf of the Estate of Tommy Yancy, Junior, deceased,<br><br>Plaintiffs,<br><br>v.<br><br>CALIFORNIA HIGHWAY PATROL OFFICER GILBERT CALDERA, CALIFORNIA HIGHWAY PATROL OFFICER SALVADOR ACEVEDO.<br><br>Defendants. | Case No. 3:15-cv-0580-JM-PCL<br><br>**PLAINTIFFS' TRIAL BRIEF**<br><br>Judge:      Hon. Jeffrey T. Miller<br>Courtroom:   5D<br>Trial Date: January 16, 2018 |

Plaintiffs Alexis Yancy and Jayden Yancy, by and through their guardian ad litem, Katherine Hawk, individually and on behalf of the Estate of Tommy Yancy, Jr., respectfully submit the following trial brief to provide an overview of the evidence, and inform the Court of potential issues that may arise during trial.

## I. PARTIES AND CLAIMS

The plaintiffs are Alexis and Jayden Yancy. They bring this lawsuit through their Guardian ad Litem, Katherine Hawk, individually and on behalf of the Estate of Tommy Yancy, Jr. This case arises from the death of plaintiffs' father, Tommy Yancy Jr. during a traffic stop on May 11, 2014.

The defendants are two California Highway Patrol (CHP) officers, Gilbert Caldera and Salvador Acevedo. The State of California has stipulated that officers Caldera and Acevedo were acting within the course and scope of their employment as CHP officers and were acting under the color of state law during the incident.

Plaintiffs assert a claim under 42 U.S.C. § 1983 for excessive force in violation of Mr. Yancy's Constitutional rights under the Fourth Amendment. Plaintiffs seek damages for Mr. Yancy's estate for Mr. Yancy's pain, suffering, and loss of enjoyment of life on the Section 1983 claim. Plaintiffs also assert a state law tort claim for battery. Plaintiffs seek wrongful death damages on the battery claim.[1]

## II. THE TRAFFIC STOP

As the Court emphasized during the motion *in limine* hearing, the focus of this case concerns what happened during the 10-minute traffic stop on May 11, 2014. Extraneous matters concerning Mr. Yancy's criminal history should not be mentioned before the jury because this information, unknown to the officers on the scene at the time of the incident, is not relevant to whether the officers conduct during the traffic stop constituted an excessive and unreasonable use of force. And other than the fact of his psychological diagnoses for schizophrenia and PTSD and

---

[1] Plaintiffs have narrowed this case significantly, dismissing the claims for negligence, negligent supervision, Bane Act, and punitive damages. Plaintiffs have also dismissed several defendants in exchange for a waiver of costs. The dismissal of claims or defendants is irrelevant and should not be mentioned to the jury at trial.

2

the medicine prescribed, the details of his psychological history should not be mentioned. Meanwhile, plaintiffs will not present any evidence of prior misconduct or citizen's complaint made against the defendant officers (unless defendants somehow open the door to admissibility).

As also discussed during the motion *in limine* hearing, the officers' version of events will conflict with the eyewitness observations of several private citizens. The jury will hear conflicting testimony. The jury will also view video from the private citizens', the AM/PM market surveillance video from across the street, and the officer's dash cameras.

Briefly, on May 11, 2014, CHP officer Gilbert Caldera pulled over Mr. Yancy because the front license plate was not affixed to the front bumper of Mr. Yancy's car. Mr. Yancy had the front license plate on his front dash. He told officer Caldera that he believed a front license plate was not required on the front bumper. Approximately 10 minutes later, Mr. Yancy was dead.

Officer Caldera claims he smelled the odor of marijuana in Mr. Yancy's car. He called for backup. CHP officer Heraclio Cardenas arrived shortly after. Within a few minutes, six officers (CHP and local police) arrive at the scene. One of those officers is CHP officer and defendant Salvador Acevedo.

Within minutes of stopping Mr. Yancy, Officer Caldera released his police dog and commanded the dog to attack Mr. Yancy. Within a minute after that attack and while Mr. Yancy is being attacked by the dog, officer Cardenas shoots Mr. Yancy with a Taser. Another officer strikes Mr. Yancy with a baton.

After the canine attack stopped, Mr. Yancy voluntarily rolled onto his stomach and put his hands behind his back to be handcuffed by the officers. The officers left Mr. Yancy lying on the road in prone position, handcuffed, for about three minutes. After the officers stood Mr. Yancy upright, they walked him back towards a patrol car. Another struggle occurred and the officers threw Mr. Yancy to the ground a second time. They stunned him again with the taser.
/////

While Mr. Yancy was on the ground on his stomach for the second time, five officers pressed their body weight on Mr. Yancy's body. While Mr. Yancy was on his belly, handcuffed, and with his face on the asphalt, officer Acevedo applied pressure on Mr. Yancy's neck with his knee. Multiple independent eye witnesses have testified how surprised they were about the amount of pressure put on Mr. Yancy's neck. As discussed below, and as the jury will hear, the autopsy revealed a fractured hyoid bone in Mr. Yancy's neck. The evidence is without conflict that this fractured hyoid bone occurred during the traffic stop.

Thus, the jury will hear that within approximately 10 minutes of pulling an unarmed Tommy Yancy over for a missed front license plate, the defendant officers applied so much force to Mr. Yancy's neck they broke his hyoid bone, he stopped breathing, and he died.

To help the jury understand the proper law enforcement procedures that should have been used, plaintiffs will call Jeff Noble. Mr. Noble is a former police officer for many years, promoted through the ranks, including service as the Deputy Chief of Police for the Irvine Police Department. Mr. Noble has testified as an expert witness on law enforcement procedure in numerous cases, including cases involving restraint/use of force cases such as this one. Plaintiffs' anticipate that defendants will call Mr. Robert Fonzi as their law enforcement procedures expert. Together, Mr. Noble and Mr. Fonzi will explain the rules and procedures officers should follow during traffic stops like Mr. Yancy's.

### III. THE MEDICAL TESTIMONY

The jury will hear from medical examiners, including plaintiffs' expert witness Werner Spitz, M.D., and Darryl Garber, M.D., who did the autopsy on Mr. Yancy's body.

### A. PLAINTIFFS' EXPERTS

The jury will also hear from plaintiffs' expert Richard Boehme, M.D., Ph.D., Dr. Boehme is board certified in neurology. He obtained a Ph.D. in biomedical engineering. Dr. Boehme has extensive background, education, training and

4

experience in evaluating hyoid bone fractures from his work in the Navy and seeing combat related fractures, his work as an emergency room physician, and his biomechanical training. Among other things, Dr. Boehme will explain the significance of the hyoid bone fracture inflicted upon Mr. Yancy in this case. For example, the jury will learn about the application of forces that caused this fracture, and the significance of this fracture in causing Mr. Yancy's death.

The jury will also hear from plaintiffs' expert Werner Spitz, M.D. Dr. Spitz is a forensic pathologist and toxicology expert. He is well-known and well-respected nationally for his expertise in death by restraint cases, and has evaluated approximately 200 such cases. From a forensic pathology standpoint, Dr. Spitz can explain the effect of the restraint process in this case that interfered with Mr. Yancy's ability to breath and the resulting cause of his death from the officer's actions.

**B. DEFENDANTS' EXPERTS**

Plaintiffs anticipate that defendants will call expert witnesses Dr. Michael Graham (forensic pathologist), Dr. Gary Vilke (emergency room physician), and Dr. Dominick Addario (psychiatrist).

Dr. Graham and Dr. Vilke both opined that Mr. Yancy died because of a condition called "excited delirium." In a nutshell, according to the defense theory, Mr. Yancy died because he was an untreated schizophrenic that became so agitated from this encounter with the police that the rush of adrenaline caused his sudden death.

However, as the jury will learn, "excited delirium" is a controversial syndrome, its existence disputed by many reputable doctors and medical organizations. It is not a medical condition or diagnosis recognized by the World Health Organization, the American Medical Association, the DSM-V (the standard diagnostic manual for all psychiatric-related diagnoses), or the ICD-9, which lists all medical diagnoses for which medical providers can bill insurers. This defense

5

seems to arise nowadays in excessive force cases where individuals die during physical restraint by law enforcement. Some consider this entire defense a scheme to whitewash the true cause of death in police restraint cases.

Moreover, even accepting *arguendo,* the legitimacy of this syndrome, Mr. Yancy did not meet the criteria. The overwhelming majority (approximately 90 percent) of individuals characterized as having excited delirium are under the influence of strong stimulant drugs such as cocaine, PCP, and methamphetamine. There is no dispute that Mr. Yancy was not under the influence of any of these drugs, or any other such stimulant. In addition, a person purportedly experiencing excited delirium will have an elevated body temperature (a response to the increased adrenaline and flight or fight response). There is no evidence that Mr. Yancy had an elevated body temperature. There are other signs – such as fixation on glass and mirrors, that Mr. Yancy did not exhibit. Therefore, defendants base their theory on the argument that Mr. Yancy was an untreated schizophrenic and susceptible to aggressive behavior.

**C. DR. ADDARIO**

As for Dr. Addario, his opinions were the subject of plaintiffs' motion *in limine* Number 2. Prior to the Court's ruling, Dr. Addario hoped to express two opinions: (1) that Mr. Yancy's aggressive behavior at the scene of the incident could not have led the CHP officers to "appreciate" Mr. Yancy's prior mental health condition, and (2) that to a reasonable medical certainty, it would have been "impossible" to talk down Mr. Yancy.

Plaintiffs explained their position that opinion number one was irrelevant because plaintiffs do not contend the officers should have acted differently because of any mental condition. Instead, they should have behaved differently regardless of any mental condition Mr. Yancy may have had.

The Court granted plaintiffs' motion *in limine* number 2, precluding Dr. Addario from opining that it would have been impossible for the police to talk

down Mr. Yancy. [*See* Docket No. 167 (Plaintiffs' MIL No. 2 "Granted on condition that defendants expert [sic, should be "plaintiffs' expert Jeff Noble] does not opine Yancy could have been talked down or that de-escalation would have been successful").] With that ruling, defendants' counsel represented that Dr. Addario would testify that Mr. Yancy was suffering from a condition at that moment that contributed to the incident. Specifically:

> And this will come as no surprise to plaintiffs' counsel, but I'll represent to the Court that what our forensic psychiatrist in a nutshell would testify to. He does – he did at the time suffer from a diagnosed condition of PTSD. The medical forensics show that he was off his medications for that condition for a considerable period of time. And someone who is in – someone with that situation is susceptible when they're – to essentially psychotic, aggressive, erratic behavior, particularly when there's a bit of a triggering incident or a stressor incident as there was in this case, and in a nutshell, that's what our forensic psychiatrist is going to testify to.

[Reporter's Transcript of Motions in Limine, November 16, 2017, at 27:11-23.]

Thus, while Dr. Addario's pre-ruling opinions were not as set forth above by counsel and instead consisted of the forbidden opinions that were the subject of the motion *in limine*, at a minimum, Dr. Addario should be limited to the opinion represented by counsel above. Essentially, Dr. Addario should be limited to the opinion that Mr. Yancy had an existing psychiatric diagnosis of schizophrenia and PTSD; that toxicology results showed he did not have Ambilify – the prescribed medication for schizophrenia, in his system at death, and this untreated psychiatric diagnosis made Mr. Yancy susceptible to psychotic, aggressive, erratic behavior.

Notably, Dr. Addario testified that he had no opinion and would not testify as to the cause of Mr. Yancy's death. [Addario Deposition, at 34:3-10.] Specifically, Dr. Addario testified he would offer no opinion on the following:

/////

7

- That Mr. Yancy's schizophrenia increased his adrenergic state and contributed to his death. [*Id.,* Addario Deposition, at 62:20-24.]
- That excited delirium was the cause of Mr. Yancy's death. [*Id.,* at 64:1-3.]
- That Mr. Yancy had cardiomyopathy or whether or not that contributed to his death. [*Id.,* at 65:3-6.]

Further, based on the Court's ruling on Plaintiffs' Motion in Limine Number 1 excluding any mention of or reference to Mr. Yancy's criminal history, Dr. Addario should also be instructed not to opine, refer to, or mention anything about Mr. Yancy's criminal history, arrests, or purported "aggression" toward other people prior to the incident.

## IV. DAMAGES

### A. 42 U.S.C. § 1983 DAMAGES

Mr. Yancy's estate may recover hedonic damages for Mr. Yancy's pre-death pain and suffering and loss of enjoyment of his life. Hedonic damages – compensation for the pain and suffering Mr. Yancy endured before his death and the loss of enjoyment of his life – are recoverable by decedent's successors in interest.

Federal law does not cover the survival of civil rights actions under section 1983. Therefore, courts look to state law governing the survival of actions and the damages that may be recovered. *See Hirschfield v. San Diego Unified Port Dist.*, No. 08CV2103BTM(NLS), 2009 WL 3248101, at *4 (S.D. Cal. Oct. 8, 2009). However, state law may not be applied when it is inconsistent with the Constitution and laws of the United States. *Id.*

In the ordinary state law case, California law precludes a plaintiff from recovering pain and suffering, disfigurement, or loss of enjoyment of life (termed "hedonic damages") in a survivor action. *See* Cal. Civ. Proc. Code § 377.34. However, the Ninth Circuit and majority opinions within the Southern, Central and

Northern federal district courts permits hedonic damages and have held that recoverable damages in a section 1983 excessive force case are not limited by California law. *See Chaudhry v. City of Los Angeles*, 751 F.3d 1096, 1105 (9th Cir. 2014). These courts have concluded that it would be inconsistent with the remedial purposes of section 1983 to bar recovery of damages for pain, suffering, and loss of enjoyment of life. Precluding such damages would undermine section 1983's goals of compensation and deterrence. Surely, if the decedent would have survived, he would be entitled to pain and suffering under the law. Thus, the deterrent purpose of section 1983 "is hardly served when the police officer who acts without substantial justification suffers a harsher penalty for injuring or maiming a victim than for killing him." *Guyton v. Phillips*, 532 F. Supp. 1154, 1167 (N.D. Cal. 1981); *see also Chaudhry*, *supra,* 751 F.3d at 1105 (holding that "California's prohibition against pre-death pain and suffering damages limits recovery too severely to be consistent with § 1983's deterrence policy. Section 377.34 therefore does not apply to § 1983 claims where the decedent's death was caused by the violation of federal law."); *T.D.W. v. Riverside Cty.,* No. EDCV 08-232CAS(JWJX), 2009 WL 2252072, at *7 (C.D. Cal. July 27, 2009) (following the reasoning in *Guyton* and denying defendants' motion *in limine* with regard to damages for decedent's pain and suffering and loss of enjoyment of life); *Sanchez v. Jiles*, No. CV1009384MMMOPX, 2013 WL 12242051, at *2 (C.D. Cal. Jan. 2, 2013) (confirming that the loss of decedent's enjoyment of life is a type of damage recoverable on a Fourth Amendment claim and permitting evidence regarding decedent's relationship and activities he shared with his sons before his death to prove loss of enjoyment of life).

    Courts have recognized that denying hedonic damages in a section 1983 case is particularly inconsistent with the deterrent effect of the federal constitutional statute in cases such as this one where the decedent died almost immediately following the alleged constitutional conduct. Absent damages for pain and

suffering or loss of life, the recoverable compensatory damages for the injury inflicted on the decedent would be minimal to non-existent. *See Hirschfield*, 2009 WL 3248101, at *4 (agreeing with the courts that hold that it would undermine the policies of § 1983 to apply state laws that preclude the recovery of loss-of-life or pain and suffering damages when the death of the victim resulted from the alleged unconstitutional violations).

Other circuits and district courts addressing analogous state court survival statutes have also determined that the exclusion of damages for hedonic damages is inconsistent with the spirit and intent of section 1983. *See, e.g., Bell v. Milwaukee,* 746 F.2d 1205, 1240-42 (7th Cir. 1984) *overruled on other grounds by Russ v. Watts*, 414 F.3d 783 (7th Cir. 2005); *Berry v. City of Muskogee*, 900 F.2d 1489, 1507 (10th Cir.1990).

Accordingly, Plaintiffs, as Mr. Yancy's successors in interest, shall be entitled to recover hedonic damages for Mr. Yancy's pre-death pain and suffering and loss of enjoyment of his life and present evidence to prove these damages at trial.

### B. ALEXIS AND JAYDEN YANCY'S WRONGFUL DEATH DAMAGES ARISING UNDER THE STATE LAW BATTERY CLAIM

Under California state law, Mr. Yancy's children, plaintiffs Alexis and Jayden Yancy are entitled to recover non-economic damages for the loss of their father's love, companionship, comfort, care, assistance, protection, affection, society, moral support, and training and guidance. *See* California Civil Jury Instructions (CACI) 3921. Plaintiffs do not seek economic damages. Therefore, any evidence of Mr. Yancy's economic condition, including evidence such as his disability payments, is irrelevant.

Plaintiffs will present testimony from a limited number of witnesses to provide the evidence of plaintiffs' recoverable loss of wrongful death damages.

/////

Notably, while defendants have suggested that they will argue that Mr. Yancy had a reduced life expectancy, *no* defense expert witness proffered any opinion that quantifies any reduction in Mr. Yancy's life expectancy. Defendants should be prohibited from attempting to offer any such previously untendered expert opinion at trial.

## V. ADDITIONAL EVIDENTIARY ISSUE: HISTORICAL EVIDENCE REGARDING MR. YANCY'S CRIMINAL HISTORY AND PSYCHOLOGICAL CONDITION IS PRECLUDED

Consistent with this Court's statements at the November 16, 2017 hearing on motions *in limine*, past criminal history, a restraining order issued years before the incident, and psychological treatment and history for purposes of liability shall be excluded at trial:

> "But in terms of liability purposes going through this, this first motion in limine, past psychological treatment, past criminal history for the purpose of liability, I don't see this type of evidence having sufficient probative value to outweigh undue prejudice . . . ."

[Reporter's Transcript of Motions in Limine, November 16, 2017, at 17:12-16.]

Only evidence of erratic or aggressive behavior at the scene of the incident that might bear on the officer's credibility of what they saw *may* be admissible, but does not open the door to admit Mr. Yancy's entire psychological history:

> "Evidence of erratic or aggressive behavior -- and we're not going into a history, a whole history here. I don't think it opens up the door to the entire history, but evidence of any current erratic behavior or aggressive behavior would bear on, one, the credibility of the officers' observations of such behavior realizing that this is almost like trying two different cases."

[Reporter's Transcript of Motions *in Limine*, November 16, 2017, at 26:1-7.]

/////

/////

## VI. CONCLUSION

It has been 3 ½ years since plaintiffs lost their father. Plaintiffs' attorneys are honored to represent these two exceptional children in such an important case. Plaintiffs' counsel commits to try this case efficiently, ethically, and to treat the Court, all court personnel, counsel, witnesses, and jurors with respect, civility, and professionalism.

Respectfully submitted,

Dated: January 11, 2018

**FOX LAW, APC**

s/ Dave A. Fox
DAVE FOX

**LAW OFFICE OF RUSSELL A. GOLD**
Russell A. Gold

Attorneys for Plaintiffs Alexis Yancy and Jayden Yancy